UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUNIKA BODEN, | ) | CASE NO. 1:15CV662 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Aunika Boden ("Plaintiff") requests judicial review of the final decision of the Commission of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on August 17, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred by: (1) substituting her lay opinion for that of the treating specialist; (2) applying the wrong legal standards when evaluating Plaintiff's fibromyalgia and credibility; and (3) failing to properly evaluate the medical opinions, including the opinion of the treating specialist. ECF Dkt. #14. On October 16, 2015, Defendant filed a response brief. ECF Dkt. #16. Plaintiff filed a reply brief on November 10, 2015. ECF Dkt. #18.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.    FACTUAL AND PROCEDURAL HISTORY

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

Plaintiff filed applications for DIB and SSI on August 24, 2011 and August 29, 2011, respectively.  ECF Dkt. #10 ("Tr.") at 22.[2]  These claims were denied initially and upon reconsideration.  *Id.*  Plaintiff then requested a hearing before an ALJ, and her hearing was held on July 10, 2013.  *Id.*

On September 27, 2013, the ALJ denied Plaintiff's applications for DIB and SSI.  Tr. at 19. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  *Id.* at 24.  Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 10, 2010, the alleged onset date.  *Id.*  The ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia; obesity; and depression. *Id.*  Following her analysis of Plaintiff's severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 25.  After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff: could never climb ladders, ropes, or scaffolds; could frequently stoop, crouch, and crawl; should avoid exposure to hazards; had no limitations on memory and could maintain concentration, persistence, or pace for unskilled work; would require a supervisor to check on her tasks twice per shift for semi-skilled work; could interact with the public, coworkers, and supervisors occasionally; and could adjust to routine changes in the workplace setting.  *Id.* at 27.

Next, the ALJ determined that Plaintiff was unable to perform any past relevant work.  Tr. at 36.  The ALJ stated that Plaintiff was a younger individual, had at least a high school education, could communicate in English, and that the transferability of job skills was not an issue because the Medical-Vocations Rules supported a finding that Plaintiff was not disabled.  *Id.* 37.  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 10, 2010 through the date of the decision. *Id.* at 38.

A request for review of the ALJ's decision was filed with the Appeals Council on November 25, 2013. Tr. at 16. This request for review was denied. *Id.* at 7. At issue is the decision of the ALJ dated September 27, 2013, which stands as the final decision. *Id.* at 19.

On April 3, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on August 17, 2015, asserting the following assignments of error:

1. The ALJ impermissibly substituted her lay opinion for that of the treating specialist.

2. The ALJ applied the wrong legal standard ine valuating [sic] [Plaintiff's] fibromyalgia and her credibility.

3. The ALJ committed legal error when she failed to properly evaluate the medical opinions including that of the treating specialist according to SSR 96-2p and 20 CFR § 404.1527.

ECF Dkt. #14 at 13-25. Defendant filed a brief in response on October 16, 2015. ECF Dkt. #16. Plaintiff field a reply brief on November 10, 2015. ECF Dkt. #18.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

After determining that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010 and that she had not engaged in substantial gainful activity since January 10, 2010, the ALJ determined that Plaintiff had severe impairments that had more than a minimal effect on her ability to perform basic work activities, as detailed above. Tr. at 24. The ALJ discussed Plaintiff's allegation that she suffered from Lyme disease, indicating that Plaintiff has been tested several times for the disease, and that the tests for the condition were negative. *Id.* Continuing, the ALJ stated that one time Plaintiff's test results for Lyme's IgM western blot showed positive results, however, upon a re-test the findings were again negative. *Id.* The ALJ also indicated that Plaintiff had consulted with Daniel Cameron, M.D., M.P.H., a physician specializing in diagnosing and treating Lyme disease, and that Dr. Cameron did not diagnose Plaintiff with Lyme

-3-

disease. *Id.* at 24-25.  For these reasons, the ALJ determined that Plaintiff did not have a medically determinable impairment resulting from Lyme disease, and that, regardless of this finding, Plaintiff's symptoms from her other conditions were addressed when determining Plaintiff's RFC to the extent the symptoms overlap and had been considered. *Id.* at 25.  The ALJ also discussed the diagnosis of Andrey S. Stojic, M.D., finding that Plaintiff suffered a paroxysmal event and ruling out seizure activity, as well as questioning whether Plaintiff had a history of Lyme disease. *Id.*  The ALJ stated that Dr. Stojic did not find that Plaintiff suffered from the medically determinable impairment of seizure disorder. *Id.*

Continuing, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments or combination of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 25.  In making this determination, the ALJ considered Listing 1.02 (major dysfunction of a joint), Listing 12.04 (affective disorder), and Listing 12.06 (anxiety-related disorders). *Id.* at 25-26.  The ALJ provided an explanation for each Listing that she considered and determined that none of these Listings were met or medically equaled. *Id.*

When determining that Plaintiff's mental impairments did not meet or medically equal paragraph (B) of Listing 12.04, the ALJ found that Plaintiff's activities of daily living were mildly restricted. Tr. at 26.  Specifically, the ALJ indicated that Plaintiff was able to take care of her personal hygiene, perform some household chores, help care for her two young children, drive a car, and shop in stores. *Id.*  The ALJ also found that Plaintiff had mild difficulties in social functioning, stating that Plaintiff testified that she lived an independent life with her mother and two small children. *Id.*  Continuing, the ALJ stated that Plaintiff reported some social isolation and difficulty maintaining relationships because she was irritable and angry, yet she maintained appropriate interpersonal relationships with family and friends. *Id.*  The ALJ also noted that Plaintiff was able to go outside on a daily basis, shop in stores, and attend doctor's appointments without difficulty. *Id.*  With regard to concentration, persistence, or pace, the ALJ determined that Plaintiff had moderate difficulties insofar as she had the ability to sustain an appropriate attention level sufficiently long to complete tasks, including watching television, taking care of her finances, and

-4-

carrying on conversations with family and friends. *Id.* at 27.  Additionally, the ALJ determined that Plaintiff had not experienced episodes of decompensation that were of extended duration. *Id.*  Since Plaintiff's mental impairments did not cause two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that the paragraph (B) criteria were not satisfied. *Id.*  The ALJ also determined that the criteria of paragraph (C) of Listing 12.04 were not satisfied. *Id.*

After considering the record, the ALJ found that Plaintiff had the RFC to perform light work, except with the restrictions detailed above.  Tr. at 27.  When making her RFC determination, the ALJ indicated that a review of the medical evidence of record, longitudinal history, and testimony provided at the hearing put Plaintiff's credibility at issue because the objective findings did not support the extreme limitations alleged and revealed that Plaintiff was not fully credible. *Id.*

The ALJ first addressed Plaintiff's claim that she experiences chronic pain throughout her body due to Lyme disease and fibromyalgia, including: achy joints; swelling of the elbows, feet, and hands; headaches; and "Lyme's rage," during which Plaintiff indicated that she experienced blackouts, occurring twice per month.  Tr. at 28.  Continuing, the ALJ stated that Plaintiff also alleged that she was unable to lift, walk, stand, or sit for prolonged periods without needing to recline in a chair with her feet elevated. *Id.*  Regarding Plaintiff's alleged symptoms, the ALJ found that the objective medical evidence and clinical findings were consistent with the RFC determination, not Plaintiff's allegations.  The ALJ provides a detailed chronological history of Plaintiff's medical treatment, indicating that Plaintiff sought treatment numerous times for pain and swelling, among other complaints.  There is special mention by the ALJ of Plaintiff's treating history with Dr. Cameron, including the fact that Plaintiff received an evaluation for Lyme disease in August 2011, but was not diagnosed with the disease by Dr. Cameron. *Id.* at 28-30.  The ALJ also notes that Dr. Cameron recommended exercise and diet modification, and that when Plaintiff was tested for Lyme disease the results showed a negative interpretation. *Id.* at 30.  Continuing, the ALJ indicated that Plaintiff visited Dr. Cameron again in February 2012, and Dr. Cameron recommended diet and exercise. *Id.*  The ALJ stated that Plaintiff again visited Dr. Cameron in July 2013, and once again Dr. Cameron did not offer a diagnosis of Lyme disease. *Id.*  Next, the ALJ addressed

-5-

Plaintiff's complaints of seizure and seizure disorder, noting that Dr. Stojic diagnosed a paroxysmal event and ruled out seizure activity, and also questioned a history of lyme disease. *Id.* at 30-31. The ALJ noted that laboratory findings often showed a negative interpretation of lyme disease, and that the one test that was positive for Lyme disease came back negative upon re-testing. *Id.* Finally, the ALJ addressed Plaintiff's alleged mental impairments. *Id.* at 31-32.[3]

Following the summary of Plaintiff's medical history, the ALJ indicated that Plaintiff's physical examinations suggested that she was capable of work activity consistent with the RFC finding. Tr. at 32. The ALJ stated that regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical impairment can not be established in the absence of objective medical abnormalities, *i.e.*, medical signs and laboratory findings. *Id.* at 32-33 (citing Social Security Rule ("S.S.R.") 96-7p). Based on the above, the ALJ stated that the objective evidence fell far short from demonstrating the existence of pain and limitations of such severity as to preclude Plaintiff from performing any work on a regular and continuing basis. *Id.* at 33. Accordingly, the ALJ found the Plaintiff to be credible, but not to the extent of the limitations alleged. *Id.*

Continuing, the ALJ indicated that the medical evidence was generally unremarkable and it did not appear that any physician had definitively diagnosed Plaintiff as suffering from Lyme disease. Tr. at 33. The ALJ again noted that a neurologist had ruled out seizure activity, and indicated that there were no medical records indicating that Plaintiff could not ambulate effectively or that her chronic pain interfered with her ability to independently initiate, sustain, or complete activities. *Id.* The ALJ stated that Plaintiff's treatment had been relatively conservative in nature and that she had not been hospitalized, undergone recent surgeries, or had injections to deal with her symptoms and complaints. *Id.* Regarding Plaintiff's treatment, the ALJ stated that the treatment consisted primarily of in-home exercises and pain medications, which were relatively effective in controlling Plaintiff's symptoms when she took the medications. Additionally, the ALJ stated that

---

[3]Plaintiff does not take issue with the ALJ's treatment of her alleged mental limitations. *See* ECF Dkt. #14. As such, there is no need to address the ALJ's assessment of Plaintiff's mental limitations at length.

Plaintiff did not always comply with her doctor's treatment recommendations and did not always take her medications as prescribed. *Id.* The ALJ acknowledged that Plaintiff was obese, and found that her obesity, in combination with other medically determinable physical impairments, did not significantly limit her physical ability to perform work activities. *Id.* at 33-34.

Next, the ALJ indicated that when analyzing the credibility of Plaintiff's subjective complaints, the first factor considered was her activities of daily living. Tr. at 34. The ALJ stated that Plaintiff testified to performing very few activities of daily living at the hearing, however, the medical evidence showed that Plaintiff performed a much wider array of activities of daily living. *Id.* Specifically, the ALJ looked to reports made by Plaintiff contained in the medical evidence indicating that she was able to: do household chores; drive a car; take care of her two young children; go outside on a daily basis; attend doctor's appointments; manage her personal finances; manage interpersonal relationships with others; watch television; and took college classes for a nursing curriculum. *Id.* Based on the above, the ALJ determined that Plaintiff's testimony was inconsistent with the longitudinal medical record. The ALJ then addressed the weight afforded to the numerous pieces of opinion evidence regarding Plaintiff's limitations when making her RFC finding.[4] Tr. at 34-36.

The ALJ determined that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, and had a high school education. Tr. at 36-37. The ALJ found that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 37. Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, through the date of the decision.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

---

[4]Plaintiff takes issue with the specific weight afforded by the ALJ to several pieces of opinion evidence. The specifics of these pieces of opinion evidence are more properly addressed below.

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  Substantial evidence is defined

as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,*

486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial

of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard

creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference."

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency

rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ

may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581

F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.      LAW AND ANALYSIS

### A.      Assignment of Error One

In her first assignment of error, Plaintiff asserts:

1.      The ALJ impermissibly substituted her lay opinion for that of the treating
        specialist.

ECF Dkt. #14 at 13.  The entirety of the ALJ's decision regarding Plaintiff's alleged Lyme disease

at the second step of the sequential evaluation is as follows:

> [Plaintiff] has alleged that she has Lyme's disease.  However, several of her test
> results for the condition have been negative.: laboratory test results for the Lyme
> IgG/IgM and Lyme Wblot were negative.  Once, her laboratory results for the Lyme's
> IgM western blot showed positive results in April of 2012.  Yet on re-test the findings
> were negative.  In addition, when she consulted with Dr .Cameron, a physician who
> allegedly specializes in diagnosing and treating Lyme disease, he did not diagnose
> her Lyme's disease.  For these reasons, I have concluded that [Plaintiff] does not have
> a medically determinable impairment of Lyme's disease.  Regardless, her symptoms
> from her other conditions have been addressed in the RFC and to the extent the
> symptoms overlap, regardless of their origin, they have been considered. [sic]

Tr. at 25 (internal citations omitted).

Plaintiff asserts that the ALJ substituted her judgment for that of a medical expert, Dr.

Cameron, and that the ALJ was not qualified to make such a substitution.[5]  ECF Dkt. #14 at 15

---

[5]It appears that there was some concern on behalf of the ALJ regarding Dr. Cameron's credibility.
*See* Tr. at 1013, 20-29.  This concern is demonstrated again by the ALJ using the term "allegedly" when
discussing Dr. Cameron's specialization in diagnosing and treating Lyme disease.  *Id.* at 25.  Plaintiff asserts

(citing *Lennon v. Apfel*, 191 F. Supp.2d 968, 977 (W.D. Tenn. 2001, February 15, 2001).  Plaintiff also contends that the ALJ's assertion that Plaintiff's symptoms had been considered, regardless of their origin, to the extent those symptoms overlapped, did not cure the impermissible act of playing doctor.  ECF Dkt. #14 at 16.  Further, Plaintiff asserts that it is unknown how the ALJ was able to comprehend and assess the manifestations of Lyme disease to determine which symptoms were overlapping when she made the statement that she considered the overlapping symptoms in her RFC finding.  *Id.*

Defendant argues that the ALJ explained that objective medical testing did not confirm that Plaintiff had Lyme disease, and that the ALJ specifically noted that laboratory test results for Lyme disease were negative.  ECF Dkt. #16 at 10.  According to Defendant, the ALJ's analysis was consistent with S.S.R. 96-4p, which states that an impairment may result from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at 11 (citing S.S.R. 96-4p).  Defendant further contends:

> [U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.  Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; *i.e.,* medical signs and laboratory findings.

*Id.*  Continuing, Defendant asserts that the ALJ may not rely on symptoms alone and must consider whether objective medical evidence, such as laboratory reports, confirms the presence of such an impairment.  *Id.*  Finally, Defendant argues that the ALJ still considered the symptoms related to plaintiff's alleged Lyme disease even though it was not a medically determinable impairment.  *Id.* at 12.

Defendant's final argument is correct, and the Court need not determine whether the ALJ did impermissibly substitute her opinion for the opinion of a medical expert.  Even if the ALJ erred in not deeming Plaintiff's alleged Lyme disease severe at Step Two, it is legally irrelevant since the ALJ specifically found that Plaintiff did suffer from other sever impairments and thereafter

---

that "there is nothing 'allegedly' about Dr. Cameron's specialty, experience, training, and stature in the area of Lyme disease."  ECF Dkt. #14 at 15.  Defendant does not address this issue in the response brief.  *See* ECF Dkt. #16.

considered Plaintiff's severe and nonsevere impairments in the rest of the sequential analysis. *Anthony v. Astrue*, 266 Fed. Appx. 451, 457, 2008 WL 508008 at *5  (6th Cir. 2008), unpublished, quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987) (ALJ's failure to find that a particular impairment was severe was harmless error where he deemed other impairments severe).  The ALJ considered both Plaintiff's severe and nonsevere impairments throughout the remainder of the sequential evaluation after finding that Plaintiff's Lyme disease was not a severe impairment, even detailing each visit Plaintiff made to Dr. Cameron.  Tr. at 28-34. Accordingly, even assuming *arguendo* that Plaintiff is correct in asserting that the ALJ improperly substituted her judgment for that of a medical expert, any error would be harmless because Plaintiff's alleged Lyme disease was considered at all subsequent stages of the sequential evaluation.

### B.    Assignment of Error Two

In her second assignment of error, Plaintiff asserts:

> 2.    The ALJ applied the wrong legal standard ine valuating [sic] [Plaintiff's] fibromyalgia and her credibility.

ECF Dkt. #14 at 16.

Plaintiff argues that the ALJ applied the wrong legal standard by evaluating her fibromyalgia under Listing 1.02.  Continuing, Plaintiff claims that the ALJ's faulty analysis also impacted her findings as to Plaintiff's credibility.  ECF Dkt. #14 at 18.  Plaintiff argues that the ALJ did not follow the proper two-step analysis, prescribed in 20 C.F.R. § 404.1529(a), requiring the ALJ to: (1) determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms; and (2) then, if such an impairment exists, evaluate the intensity, persistence, and limiting effects off those symptoms on the claimant's ability to do basic work activities.  *Id.*  Plaintiff maintains that to perform this two-step analysis, the ALJ must consider the following six factors in addition to the objective medical evidence: (1) the individuals daily activities, (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms, (3) the factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has

-11-

taken to alleviate pain or other symptoms, (5) treatment other than medication the individual receives or has received for relief of pain or other symptoms and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *Id.* at 18-19 (internal citations omitted).

After laying out the analysis and factors provided above, Plaintiff makes no specific argument as to how the ALJ failed to comply with the analysis or consider any of the six factors. *See* ECF Dkt. #14 at 19. Instead, Plaintiff move on to a discussion of S.S.R. 12-2p, asserting that the ALJ failed to consider the longitudinal history and the variability of Plaintiff's symptoms as required by the Rule. *Id.* at 19. Plaintiff argues that the ALJ strung together a variety of activities that provided an unfair analysis of the evidence and created an incorrect picture of Plaintiff's abilities. *Id.*

Next, Plaintiff again asserts that the ALJ failed to follow the six factor analysis required by 20 C.F.R. § 404.1529(a), this time claiming that the ALJ "did not consider the location, duration and frequency of all [Plaintiff's] symptoms and did not consider the precipitating and aggravating factors and lack of concentration just to name a few." ECF Dkt. #14 at 20. Plaintiff provides no further argument as to how she believes the ALJ failed to comply with 20 C.F.R. § 404.1529(a) beyond these general allegations.

Defendant contends that the ALJ considered Plaintiff's history of medical treatment. ECF Dkt. #16 at 14. In support of this contention, Defendant asserts that while Plaintiff's consistent treatment for fibromyalgia bolsters her credibility, Plaintiff was able to control her symptoms with conservative measure, never underwent any hospitalizations, surgeries, or injections, and was treated with medications and recommendations to diet and exercise. *Id.* Defendant also highlights numerous occasions upon which Plaintiff either reported relief from her symptoms after taking her medications or was noncompliant with her medications. *Id.* at 14-15. Continuing, Defendant indicates that the ALJ noted that Plaintiff provided inconsistent statements concerning her ability to perform her activities of daily living, highlighting disparities and direct contradictions between Plaintiff's hearing testimony, during which she described severe limitations, and Plaintiff's

application for benefits, upon which she described limitations that were much less severe. *Id.* at 15-16.

Defendant's arguments prevail.  Plaintiff accuses the ALJ of failing to comply with the law and the applicable rules, but fails to provide any argument as to how Defendant failed to comply beyond asserting that Defendant did not consider the longitudinal history of Plaintiff's symptoms and the variability of her symptoms as required by S.S.R. 12-2p.  A review of the ALJ's decision reveals that the ALJ considered the longitudinal history of Plaintiff's medical treatment.  *See* Tr. at 28-36.  The ALJ went into considerable detail laying out Plaintiff's medical history from 2010 into 2013, the dates at issue for the instant case.  *Id.*  The ALJ indicates dates on which Plaintiff reported her condition improved, but also indicates on which dates Plaintiff reported worsening of her symptoms.  *Id.*  It does not appear from the ALJ's decision, and Plaintiff fails to demonstrate, that the ALJ strung together a variety of activities  that provided and unfair analysis of the evidence and created an incorrect picture of Plaintiff's abilities.

Likewise, the ALJ did not improperly evaluate Plaintiff's credibility.  In addition to relying on reports from physicians, the ALJ relied largely on Plaintiff's own contradictory statements in determining that she was not entirely credible.  Regarding the inconsistency of Plaintiff's own statements, the ALJ remarks, in part:

> In analyzing the credibility of [Plaintiff's] subjective complaints, the first factor considered was her daily activities.  At the hearing, [Plaintiff] first indicated that she performed few activities of daily living.  However, the medical evidence indicated that [Plaintiff] performed a much wider array of activities of daily living.  In fact, [Plaintiff] reported she could do household chores, drive a car, and take care of her two young children. [Plaintiff] reported she could go outside on a daily basis, attend doctor's appointments, and manage her personal finances. [Plaintiff] could maintain appropriate interpersonal relationships with others, watch television, and at one point took college classes for a nursing curriculum.  Thus, this testimony, when coupled with [Plaintiff's] daily activities, suggest that such testimony is inconsistent with the longitudinal medical record.

Tr. at 34.  The ALJ's credibility finding was based on substantial evidence in the record and on Plaintiff's own contradictory statements.

Accordingly, the ALJ's evaluation of Plaintiff's fibromyalgia did not fail to comply with the law or the applicable rules.  Further, the ALJ's credibility determination is not grounds to reverse and remand.

-13-

### C.    Assignment of Error Three

In her third assignment of error, Plaintiff asserts:

3.    The ALJ committed legal error when she failed to properly evaluate the medical opinions including that of the treating specialist according to SSR 96-2p and 20 CFR § 404.1527.

ECF Dkt. #14 at 21.  The ALJ afforded little weight to the opinion of treating physician Dr. Cameron.  Tr. at 36.  The ALJ explains the decision to afford limited weight to Dr. Cameron's opinion as follows:

> I gave limited weight to medical source statement by Dr. Cameron dated March 22, 2012 to the extent that his diagnosis of Lyme disease was not supported by his own treatment records especially those found in exhibits 6F and 12F.  In those records, Dr. Cameron offered a diagnosis for painful joint, back pain, and fatigue, but failed to diagnosis the claimant with Lyme disease.  Dr. Cameron also failed to provide the objective support, which he relied upon to make his assessment, and the severity of his findings appeared not supported by his treatment records.  Therefore, it appears his opinion is less than professionally objective and credible.  Accordingly, I gave limited weight to this assessment.

Tr. at 36.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).  If  that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

-14-

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Commissioner of Soc. Sec.*, No. 09-3889, 2010 WL 1725066 at *8 (6th Cir. Apr.28, 2010). For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered. *Barrett v. Astrue*, 2011 WL 6009645, at *6 (E.D.Ky. Dec.1, 2011).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ).

Plaintiff argues that Dr. Cameron made it clear that it was his clinical opinion, based on the totality of Plaintiff's symptoms and the facts of the case as presented to him, that Plaintiff suffered from Lyme disease.  ECF Dkt. #14 at 23.  Continuing, Plaintiff asserts that Dr. Cameron's opinion

-15-

was well supported by the clinical record and was not inconsistent with other substantial evidence in the record. *Id.* Next, Plaintiff contends that even if Dr. Cameron's opinion was not entitled to controlling weight, it was entitled to great deference. *Id.* at 24. Plaintiff argues that the ALJ was required by S.S.R. 96-2p to consider the six factors set forth in 20 C.F.R. § 404.1527(d)(2) to determine the weight to be afforded to Dr. Cameron's opinion, but failed to consider these factors. *Id.* Additionally, Plaintiff asserts that, as a lay person, the ALJ: was not entitled to discredit the opinion of the treating specialist based on her understanding of medicine; was unqualified to interpret raw medical data and had no guidance or assistance from a medical source to reach a conclusion contrary to the conclusion reached by Dr. Cameron; and failed to provide any evidence to support her assertion showing that Dr. Cameron's opinion was less than professionally objective and credible. *Id.* Finally, Plaintiff briefly argues that the ALJ failed to evaluate the opinion of Dr. Stojic, another treating physician, which was consistent with Dr. Cameron's opinion. *Id.*

Defendant contends that the ALJ identified several reasons for giving little weight to Dr. Cameron's opinion, namely, Dr. Cameron's treatment notes failed to support her alleged condition and Dr. Cameron never diagnosed Plaintiff as suffering from Lyme disease in his treatment notes. ECF Dkt. #16 at 17. Continuing, Defendant asserts that Dr. Cameron did not explain his diagnosis of Lyme disease until after he rendered his opinion and, even then, he admitted that the objective evidence did not support the diagnosis. *Id.* Further, Defendant maintains that the ALJ explained that Dr. Cameron failed to provide the objective support which he relied upon to make his findings, and that Plaintiff's symptoms are not objective findings. *Id.*

Next, Defendant stated that the ALJ noted that Dr. Cameron's assessment was inconsistent with his own treatment notes, which failed to indicate that Plaintiff had similar levels of restriction as Dr. Cameron's past treatment notes. ECF Dkt. #16. At 17. Defendant continues, indicating that Dr. Cameron did not provide any documentation or evidence showing that Plaintiff's pain was so severe that she was unable to perform postural movements, and, in fact, Plaintiff's examinations were generally normal. *Id.* Defendant also indicates that Dr. Cameron never suggested that Plaintiff's activities or movement should be restricted. *Id.* As to Plaintiff's assertion that Dr. Cameron's clinical opinion that she had Lyme disease was sufficient support for his assessment,

-16-

Defendant argues that the regulations require clinical and laboratory diagnostics to support an opinion. *Id.* at 18. Following this statement, Defendant again indicated that the record did not contain objective evidence to establish that Plaintiff suffered from Lyme disease and that Dr. Cameron's treatment notes fail to include any findings that would reflect the type of limitations included in his assessment. *Id.* Defendant contends that the ALJ reasonably discounted the opinion of Dr. Stojic, who rendered his opinion after reviewing a report completed by a physical therapist.

Plaintiff fails to show that the ALJ improperly evaluated the medical opinions, including the opinion of the treating specialist, Dr. Cameron. Plaintiff contends that Dr. Cameron made it clear that his clinical opinion was that Plaintiff suffered from Lyme disease, however, Plaintiff provides no citation to support her contention. *See* ECF Dkt. #14 at 23; ECF Dkt. #18 at 7 (Plaintiff makes the contention that Dr. Cameron's clinical opinion was that Plaintiff was suffering from lyme disease in both documents, but does not provide a citation in support). It appears that Plaintiff is relying on the March 22, 2013 questionnaire and a July 2013 letter, both prepared by Dr. Cameron. Tr. at 619, 1014-15. Plaintiff asserts that Dr. Cameron's opinion was well supported by the clinical record and was not inconsistent with other substantial evidence in the record. ECF Dkt. #14 at 23.

Despite Plaintiff's assertion, the medical record does not lend to a finding that Dr. Cameron's opinion was well supported by the clinical record or was not inconsistent with other substantial evidence. Defendant correctly indicates that Dr. Cameron's own treatment notes fail to support a finding that Plaintiff was diagnosed with Lyme disease. The ALJ correctly points to treatment records from Dr. Cameron assessing Plaintiff as suffering from: disturbed sleep, fever, and fatigue; and painful joints, back pain, and fatigue. Tr. at 388-98, 436-45. Neither of these records indicate that Dr. Cameron diagnosed Plaintiff as suffering from Lyme disease even after Dr. Cameron appears to have made inquiries into whether Plaintiff had been potentially exposed to Lyme disease or exhibited symptoms of Lyme disease in the past. *Id.* Plaintiff does not highlight any document in the treatment notes supporting the contention that Dr. Cameron was of the opinion that Plaintiff had Lyme disease prior to the opinion he presented for this case.

Further, the course of treatment recommended by Dr. Cameron by no means mirrored his later opinion that Plaintiff was totally unable to work. Rather than prescribing treatment that would

-17-

reflect an inability to work, Dr. Cameron repeatedly prescribed medications and recommended diet modifications. *Id.* at  391, 438, 722, 724, 727.  Even more telling is the fact that Dr. Cameron repeatedly recommended that Plaintiff exercise. *Id.*  This is in stark contrast to the opinion evidence offered by Dr. Cameron in his March 22, 2012 questionnaire indicating that Plaintiff was unable to "bend, stoop, lift due to back pain" or lift her child of one-to-two years of age. *Id.* at 620.  Likewise, Dr. Cameron's July 2013 letter places much more stringent restrictions on Plaintiff, such as: the inability to sit for twenty minutes; the ability to stand for only an hour, including walking and stopping; the inability to maintain concentration for longer than twenty to thirty minutes; fatigue after five minutes of typing or thirty minutes of using a mouse; and an inability to walk for more than ten minutes. *Id.* at 1015.

The ALJ discussed the disparity between the Dr. Cameron's treatment notes and his opinion regarding Plaintiff's limitations.  For example, the ALJ indicated that Dr. Cameron stated that Plaintiff's gait was normal, and her upper and lower extremity strength was also normal.  Tr. at 30. The ALJ also noted that Dr. Cameron recommended diet modification and exercise, rather than diagnosing Plaintiff with Lyme disease. *Id.*  Additionally, the ALJ provided a detailed description explaining that many of Plaintiff's physicians routinely made unremarkable findings when Plaintiff presented complaining of various types of pain. *Id.* at 28-31.

Plaintiff also asserts that the ALJ failed to consider the six factors set forth in S.S.R. 96-2p and 20 C.F.R. § 404.1527(c).[6]  ECF Dkt. #14 at 24.  Contrary to Plaintiff's position, the ALJ did consider all of the factors contained in 20 C.F.R. § 404.1527(c), which are the: (1) examining relationship; (2) treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion; (5) the treating physician's specialization; and (6) other factors presented by the claimant. *Id.*  As to the first two factors, the ALJ was clearly aware that Dr. Cameron had examined Plaintiff and that they had a treating relationship, as the ALJ stated "[Plaintiff's] treatment records showed a treating history with Daniel J. Cameron, M.D."  Tr. at 30.  Further, the ALJ detailed the results of multiple visits Plaintiff made to Dr. Cameron over the course of their treating relationship. *Id.*  It

---

[6]Although Plaintiff cites to 20 C.F.R. § 404.1527(d)(2) in her brief, the six factors she is referring to are actually presented in 20 C.F.R. § 404.1527(c).

is also clear that the ALJ considered the forth and fifth factors of 20 C.F.R. § 404.1527(c) because to what extent Dr. Cameron's opinion is supported by the medical evidence and the consistency of the opinion with the record as a whole are the exact reasons why the ALJ afforded Dr. Cameron's opinion less than controlling weight, as discussed above. *Id.* at 36. While it appears that there may have been some concern over the fifth factor of 20 C.F.R. § 404.1527(c), the ALJ was aware of Dr. Cameron's specialization and determined, based on the medical evidence, to afford lesser weight to Dr. Cameron's opinion despite his specialization. *See id.* at 1013, 1020-29. 20 C.F.R. § 404.1527(c)(5) indicates that more weight is "generally" given to the opinion of a specialist, however, the ALJ provided good reasons as to why lesser weight was afforded to Dr. Cameron's opinion. Finally, Plaintiff does not indicate any other factors that she raised that tended to support Dr. Cameron's opinion, and thus the ALJ was not required to consider any other factors under 20 C.F.R. § 404.1527(c).

Finally, Plaintiff briefly argues that the ALJ failed to evaluate the opinion of Dr. Stojic, who Plaintiff claims was also a treating physician, which was consistent with Dr. Cameron's opinion. ECF Dkt. #14 at 24. Dr. Stojic's opinion relied on a physical assessment performed by Richard Wells, P.T. As an initial matter, Plaintiff provides no explanation as to why she believes Dr. Stojic qualified as a treating physician. That being said, the opinion provided by Dr. Stojic makes no mention of Lyme disease and the only time Lyme disease is mentioned in Mr. Wells' report is when he states that Plaintiff told him that she suffered from "chronic Lyme disease." Tr. at 982-87. Plaintiff claims that the ALJ failed to evaluate the opinion of Dr. Stojic, however, the ALJ did evaluate and point out numerous inconsistencies in the physical assessment performed by Mr. Wells, on which Dr. Stojic's opinion relied. Tr. at 36. Further, Defendant correctly asserts that the ALJ provided good reasons as to why she declined to afford Dr. Cameron's opinion significant weight, and thus was under no obligation to provide more weight to the opinion of Dr. Stojic's consistent opinion. *See* ECF Dkt. #16 at 19. Accordingly, Plaintiff has failed to show that the ALJ improperly weighed any medical opinion in the instant case.

## VI.    CONCLUSION

-19-

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: June 24, 2016                          _/s/George J. Limbert_
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE